**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DONALD MOORE** | **CIVIL ACTION** |
| **VERSUS** | |
| **LOUISIANA GENERATING, LLC, XYZ INSURANCE COMPANY, CATERPILLAR INC., ABC INSURANCE COMPANY, LOUISIANA MACHINERY COMPANY AND DEF INSURANCE COMPANY** | **NO. 09-789-C-M2** |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 10 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report.  The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 10 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in chambers in Baton Rouge, Louisiana, November 19, 2009.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DONALD MOORE | CIVIL ACTION |
| VERSUS | |
| LOUISIANA GENERATING, LLC, XYZ INSURANCE COMPANY, CATERPILLAR INC., ABC INSURANCE COMPANY, LOUISIANA MACHINERY COMPANY AND DEF INSURANCE COMPANY | NO. 09-789-C-M2 |

## MAGISTRATE JUDGE'S REPORT

This matter is before the Court on the Motion to Remand (R. Doc. 6) filed by plaintiff, Donald Moore ("Moore"). The removing defendant, Caterpillar, Inc. ("Caterpillar"), has filed an opposition (R. Doc. 9) to Moore's motion.

## FACTS & PROCEDURAL BACKGROUND

Moore, a Louisiana citizen, filed this suit against the defendants in the 18th Judicial District Court, Parish of Pointe Coupee, State of Louisiana, on March 25, 2009. The suit arises out of injuries Moore sustained when he fell approximately ten (10) feet to the ground from a Caterpillar 657 E Coal Scraper machine that exploded allegedly as a result of an emission of oil from a faulty control valve on the machine.[1] Caterpillar, a Delaware corporation with its principal place of business in Peoria, Illinois, is the manufacturer of the machine. Defendant, Louisiana Machinery Company ("Louisiana Machinery"), is the

---

[1] Moore contends that the coal scraper machine should have had a "Release Valve" that would have prevented his accident from occurring "by allowing the pressure built up within [the machine] to escape and/or drain." *See*, Paragraph 7 of the Petition for Damages, R. Doc. 1-3.

1

company that sold the machine to defendant, Louisiana Generating, LLC ("Louisiana Generating"), Moore's employer.[2]  In the petition, Moore alleges that he sustained "serious bodily injury" as a result of the incident in question and that the defendants are liable to him for the following damages:  "mental anguish, emotional distress, loss of enjoyment of life, physical pain and suffering (past and future), lost wages (past and future), impairment of wage earning capacity, and medical bills, all past, present, and future, above the jurisdictional requirement for trial by jury."

Caterpillar removed Moore's suit to this Court on September 23, 2009, on the basis of diversity jurisdiction, alleging that the non-diverse defendants, Louisiana Generating and Louisiana Machinery, have been improperly joined in this case.  Moore has now filed the present motion, seeking remand of his suit to state court on the basis that there is not complete diversity of citizenship among the plaintiffs and defendants since Louisiana Generating and Louisiana Machinery were properly joined in this matter and because the amount in controversy in this matter does not exceed $75,000.00, exclusive of interest and costs.

## **LAW & ANALYSIS**

Under 28 U.S.C. § 1332(a), a federal court has diversity jurisdiction if the matter in controversy:  (1) exceeds $75,000.00, exclusive of interest and costs, and (2) is between citizens of different states.  Moore and Caterpillar disagree as to whether either of those required elements exist in this case.

**I.      Amount in controversy element:**

---

[2] Both Louisiana Machinery and Louisiana Generating are obviously Louisiana citizens and therefore non-diverse defendants.

In cases removed to federal court on the basis of diversity, the removing defendant must prove, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.00, and it may make that showing in either of two (2) ways: (1) by demonstrating that it is "facially apparent" from the petition that the claims are likely to exceed $75,000.00, or (2) "by setting forth facts in controversy - preferably in the removal petition, but sometimes by affidavit - that support a finding of the requisite amount." *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999), citing *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295 (5th Cir. 1999).[3]

If a removing defendant shows that the amount in controversy is likely to exceed the federal jurisdictional minimum, the burden then shifts to the plaintiff to show that it is a "legal certainty" that he or she will not be able to recover the jurisdictional amount – a burden which can be met by: (1) showing state procedural rules binding the plaintiff to its pleadings;[4] or (2) filing a binding stipulation or affidavit to that effect with the complaint. *De Aguilar v. Boeing Co.*, 47 F.3d 1404 (5th Cir. 1995). If, however, the amount in controversy remains ambiguous after considering the facts and evidence presented by the defendant,

---

[3] If it is not "facially apparent" from the petition that the requisite jurisdictional amount is in controversy, the court may rely on "summary judgment-type" evidence relevant to the amount in controversy at the time of removal to make the determination. *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999); *White v. FCI USA, Inc.*, 319 F.3d 672, 675 (5th Cir. 2003). All doubts and uncertainties regarding federal jurisdiction must be resolved in favor of remand. *Sutherland v. First Nationwide Mortgage Corp.*, 2000 WL 1060362 (N.D. Tex 2000). Under any manner of proof, jurisdictional facts which support removal must be judged at the time of removal, and post-petition affidavits are allowable only if relevant to that period of time. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

[4] For example, the plaintiffs' state court petition might cite a state law that prohibits recovery of damages that exceed those requested in the *ad damnum* clause and that prohibits the initial *ad damnum* clause from being increased by amendment.

the Court may consider a post-removal stipulation filed by the plaintiff designed to clarify the ambiguity by determining the amount that was in controversy as of the date of removal. *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000)

Looking solely at the allegations in Moore's petition, it is ambiguous as to whether or not his damages in this matter will exceed $75,000.00, exclusive of interest and costs. Although Moore indicates that his damages are "above the jurisdictional requirement for a trial by jury," which, in state court, is above $50,000.00,[5] the list of damages contained in the petition simply provides the usual and customary damages set forth by personal injury plaintiffs and does not provide the Court with any guidance as to the actual monetary amount of damages Moore has or will incur in this matter.

The Court also finds that Moore's failure to stipulate in his state court petition that his damages are worth less than the federal jurisdictional minimum in accordance with La.C.C.P. art. 893 alone is insufficient to establish that diversity jurisdiction exists herein. All three U.S. District Courts in Louisiana have reached that conclusion. *See, Weber v. Stevenson*, 2007 WL 4441261 (M.D.La. 2007)(While the failure to include an allegation in the state court petition that one's damages are less than the federal jurisdictional minimum in accordance with La.C.C.P. art. 893 is entitled to "some consideration," it is not, in and of itself, determinative of the amount in controversy. A finding that the failure to include the "893" allegation resulted in the satisfaction of the jurisdictional minimum would be tantamount to finding that subject matter jurisdiction may obtain from a procedural

---

[5] *See*, La.C.C.P. art. 1732, which provides that a state trial by jury shall not be available in a suit where the amount of no individual petitioner's cause of action exceeds $50,000.00, exclusive of interest and costs.

omission, which is unsupportable).[6] Accordingly, it is not "facially apparent" from Moore's petition that his damages in this matter are likely to exceed the jurisdictional minimum.

Because the jurisdictional amount is not "facially apparent" from the petition, the Court must next consider whether Caterpillar has met its burden of proving, through summary judgment-type evidence, that the requisite amount is in controversy in this matter for purposes of diversity jurisdiction. In its opposition to the present motion, Caterpillar first refers the Court to Moore's response to Caterpillar's Interrogatory No. 14, wherein he claims $21,592.00 in medical expenses. *See*, Response to Interrogatory No. 14, Exhibit 1 to Caterpillar's opposition. Secondly, Caterpillar refers to Moore's response to Interrogatory No. 13, in which he claims that, as a result of the incident in question, he missed approximately five and one-half months of work and the income resulting from that work. *See,* Response to Interrogatory No. 13, Exhibit 1 to Caterpillar's opposition ("Off work on March 25, 2008, and from April 28, 2008 until October 13, 2008; Schedule: Monday-Thursday 10 hours per day at $27 per hour; and Overtime approximately 30 hours per week for 4 weeks during September and October (Thursday through Sunday)"). Considering such interrogatory response, Moore is contending that he missed over twenty

---

[6] *See also, Lilly v. Big E Drilling Co.*, 2007 WL 2407254 (W.D.La. 2007)(If parties may not create subject matter jurisdiction by express agreement or stipulation, which is well settled, then the mere inaction of the plaintiff in failing to include an allegation that his/her damages are less than the federal jurisdictional minimum in accordance with La.C.C.P. art. 893 cannot give rise to presumptive federal jurisdiction or satisfy the defendant's burden of proving, through allegations of fact or record evidence, that the amount in controversy requirement is met); *Berthelot v. Scottsdale Insurance Co. of Arizona*, 2007 WL 716126 (E.D.La. 2007)("[I]n light of the requirement that this Court strictly construe the jurisdictional statutes and resolve ambiguities in favor of remand, the Court disagrees that the silence of the petition [in failing to plead the lack of federal jurisdiction in accordance with La.C.C.P. art. 893] creates federal jurisdiction").

(20) weeks of work at a minimum of $1,080.00 per week (40 hour work week at $27/hour), and his claim for lost income therefore exceeds $21,600.00.

Thirdly, Caterpillar refers the Court to the medical records attached to Moore's discovery responses. S*ee,* Exhibit 1 to Caterpillar's opposition, Medical Records attached to Moore's discovery responses. Those records indicate that, following Moore's fall, he was flown to Our Lady of the Lake Regional Medical Center in Baton Rouge. He underwent x-rays/surveys of the lumbar and cervical spine and the coccyx and a CT scan of the thoracic spine, which revealed that he sustained a compression fracture of his L1 vertebra. Following his emergency room visit, Moore continued to complain to his physicians regarding neck pain, mid- and low-back pain, and radicular symptoms in his upper and lower extremities. Moore was treated with a lower back brace with a thoracolumbar sacral orthosis that he wore for approximately two (2) months for external stabilization, and he underwent physical therapy in August and September 2008. As of November 2008, Moore reported to his physician that, while his mid-back pain had improved, his low back pain and leg radicular symptoms had gradually increased in severity and had become more constant, interfering with his quality of life and activities of daily living. Moore therefore underwent a lumbar epidural steroid injection and a lumbar steroid facet injection in January 2009. As of his office visit in March 2009, Moore's physician noted that, although Moore's overall condition had improved, his back pain and leg radicular symptoms are "gradually returning but are not as severe." Another trial of physical therapy was to be initiated after Moore's March 2009 office visit.

Caterpillar has cited several cases involving plaintiffs with injuries similar to that of Moore where they received general damage awards in excess of $45,000.00. *See, Moore*

6

*v. Kenilworth/Kailas Properties*, 2003-0738 (La. App. 4 Cir. 2004), 865 So.2d 884 (Employee diagnosed with a compression fracture at the L1 vertebra after acoustical ceiling tiles fell on her in doctor's office received general damages award of $75,000.00); *Nichols v. Stone Container Corp.*, 552 So.2d 688 (La. App. 2 Cir. 1989)(Plaintiff diagnosed with compression fracture of the L-2 vertebra shortly after accident, and tests later confirmed a bulging disc at L-4 to L-5. The court found the lowest affirmable award of general damages was $45,000.00); *Turner v. Krauss Co., Ltd.*, 543 So.2d 563 (La. App. 4 Cir. 1989)(holding that an $80,000.00 award of general damages was not excessive in case where plaintiff sustained a compression fracture of two vertebrae in her spine). The Court's independent quantum research also indicates that, based upon damage awards in Louisiana for plaintiffs with similar injuries, Moore is likely to receive total damages in excess of $75,000.00 in this suit. *See, Olivier v. Best Workover, Inc.*, 94-994 (La. App. 5 Cir. 1/30/96, 669 So.2d 476 (General damages of $150,000.00 to plaintiff who suffered 20% compression fractures of two vertebrae was not an abuse of discretion); *Andrus v. State Farm Mut. Auto. Ins. Co.*, 95-0801 (La. 1996), 670 So.2d 1206 (fixing an award of past and future physical pain and suffering at $75,000.00 for a plaintiff that suffered a compression fracture of the thoracic vertebra, temporomadibular joint (TMJ), arthralgia and injury to the cervical spine); *Williams v. Taylor*, 35, 299 (La. App. 2d Cir. 12/5/01), 803 So.2d 268 (Plaintiff who sustained compression fractures of four thoracic vertebrae and a broken rib received $50,000.00 in general damages).

Considering that Caterpillar has produced summary-judgment type evidence and jurisprudence indicating that Moore is seeking $21,592.00 in medical expenses, at least $21,600.00 in lost income, and has sustained injuries that will likely result in an award of

general damages exceeding at least $45,000.00, Caterpillar has carried its burden of proving, by a preponderance of the evidence, that the amount in controversy in this matter is likely to exceed $75,000.00.  As such, the burden of proof shifts to Moore to demonstrate to a legal certainty that he will not be able to recover that amount in this suit.  As mentioned above, Moore can carry that burden in two (2) ways:  (1) by showing state procedural rules binding the plaintiff to its pleadings; or (2) by filing a binding stipulation or affidavit to that effect with the complaint.  *De Aguilar v. Boeing Co.*, 47 F.3d 1404 (5th Cir. 1995).  Because Moore has done neither, the amount in controversy element of diversity jurisdiction is satisfied in this case.

## II.     Improper joinder element:

As mentioned above, Caterpillar contends that complete diversity of citizenship exists in this matter because the non-diverse defendants, Louisiana Generating and Louisiana Machinery, have been improperly joined, and their citizenship should therefore be ignored in determining whether this Court has subject matter jurisdiction.  A removing party attempting to prove improper joinder carries a heavy burden.  *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002).  If there is arguably a reasonable basis for predicting that state law might impose liability on the facts involved, there is no improper joinder.  *Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003).[7]  In determining whether there is an arguably reasonable basis for the plaintiff's claims, a district court must resolve any contested issues of material fact and any ambiguity or

---

[7] This does not mean that any mere theoretical possibility of recovery, no matter how remote or fanciful, prevents removal. *Badon v. RJR Nabisco Inc.*, 236 F.3d 282, 286, n. 4.  To preclude a finding of fraudulent joinder, the basis for recovery must at least be arguably reasonable. *Id.*

8

uncertainty in the controlling state law in the plaintiff's favor. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999). If there is any possibility the plaintiff has stated a cause of action against any non-diverse defendant, the court must conclude that joinder is proper, thereby defeating diversity and requiring the case to be remanded. *Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources, Ltd.*, 99 F.3d 746, 751 (5th Cir. 1996).

The U.S. Fifth Circuit Court of Appeals has recognized that a court may determine whether a plaintiff has a reasonable basis of recovery under state law in one of two ways. *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). A court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations in the complaint to determine whether the complaint states a claim under state law against the in-state defendant.[8] Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, improper joinder does not exist. However, there are cases, where a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder, and in such cases, the court may, in its discretion, pierce the pleadings and conduct a summary inquiry by examining outside evidence.[9] *Id.*; *McDonald v. Abbott Laboratories*, 2005 WL 957142, * 4, n. 6 (5th Cir. 2005). A court may examine affidavits, evidence, and deposition

---

[8] When reviewing a motion pursuant to Fed. R. Civ. P. 12(b)(6), a court "must accept all well pleaded averments as true and view them in the light most favorable to the plaintiff. [The court] will not go outside the pleadings and . . . cannot uphold the dismissal 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief." *Hernandez v. Maxwell*, 905 F.2d 94, 96 (5th Cir. 1990).

[9] Under a summary judgment-type inquiry, a court is to "pierce the pleadings to determine whether, under controlling state law, the non-moving party has a valid claim against the non-diverse parties." *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004).

9

testimony to determine whether the plaintiff has a reasonable basis of recovery against the non-diverse defendants. *McLin v. H & H Lure Co.*, 102 F. Supp. 341, 343 (M.D. La. 2000).

**(A)    Is there an "arguably reasonable basis" for Moore's claims against Louisiana Machinery?**

As mentioned above, Louisiana Machinery is the company that sold the coal scraper machine in question to Moore's employer, Louisiana Generating. In the petition, Moore alleges that Louisiana Machinery also serviced the machine in question. Moore contends that Louisiana Machinery is liable to him for the following acts of negligence: (1) breach of a legally imposed duty of reasonable care; (2) failure to properly maintain the coal scraper machine in question; (3) failure to warn or notify; (4) failure to diagnose any and all defects or mechanical problems, including but not limited to any defect or mechanical problem with the "Hitch Assembly System" on the coal scraper machine in question; (5) violation of state or other safety laws, constituting negligence *per se*; and (6) other acts of negligence to be proven at trial. *See*, Paragraph 17 of the Petition for Damages, R. Doc. 1-3.

Under Louisiana law, a non-manufacturer seller, such as Louisiana Machinery, in some instances, has a duty to warn a purchaser of defects and/or dangerous propensities in the products it sells. *Adams v. Owens-Corning Fiberglas Corp.*, 2004-1589 (La. App. 1 Cir. 9/23/05), 923 So.2d 118, 123. In the case of an allegedly defective product, such as the coal scraper machine in question, however, the non-manufacturer seller can be held liable for damages in tort only "if he knew or should have known that the product was defective and failed to declare the defect to the purchaser." *Id.* Furthermore, a non-manufacturer seller is not required to inspect the product prior to sale to determine the

possibility of "inherent vices or defects." *Id.*

As mentioned above, the defect in the coal scraper machine that is alleged by Moore is an inherent defect in the design of that machine, *i.e.*, the failure to incorporate a master "Relief Valve" in the machine's design that would "release all hydraulic pressure within the machine system." *See*, Petition, R. Doc. 1-3, ¶13; Exhibit 1 to Caterpillar's opposition, Moore's response to Interrogatory No. 5. With its opposition to the present motion, Caterpillar has produced the affidavit of Randy Tyrone ("Tyrone"), the Service Manager of Louisiana Machinery's facility in Reserve, Louisiana, wherein Tyrone attests to the fact that Louisiana Machinery is not in the business of designing or manufacturing coal scrapers and has no control or influence over the design of the coal scrapers that Caterpillar manufactures and/or that it sells to the public. *See*, Affidavit of Tyrone, Exhibit 3 to Caterpillar's opposition, R. Doc. 9-4, ¶11. Tyrone further indicates that, prior to Moore's accident, Louisiana Machinery had "no knowledge of, nor did it observe, any alleged defect related to the lack of a 'master' 'Release Valve'." He also states that Louisiana Machinery received no notification from any source of any design defect related to the lack of such a valve, nor is the company aware of any recalls or field campaigns involving that or any similar issue relating to the coal scraper machine in question. *Id.*, ¶¶12. Tyrone explains that, when Louisiana Machinery took possession of the subject machine from Caterpillar, all of the machine's systems were fully installed, and Louisiana Machinery never modified the machine, nor did it ask anyone to modify the design of the coal scraper and/or any of its components. *Id.*, ¶13.

Based upon the above attestations, it appears that Louisiana Machinery did not have actual or constructive knowledge that the coal scraper machine in question contained the

11

alleged "master Release Valve" design defect.  Thus, there is no "arguably reasonable basis" for predicting that Moore might recover from Louisiana Machinery for failing to declare that defect to his employer that purchased the product from Louisiana Machinery in June 2003.  Moreover, although Moore alleges that Louisiana Machinery serviced the coal scraper in question and failed to properly maintain it, the Affidavit of Tyrone indicates that Louisiana Machinery had no maintenance contract with Louisiana Generating requiring it to perform maintenance on the machine in question.  Additionally, although Louisiana Machinery performed several repairs on the machine after Louisiana Generating purchased it, Tyrone's affidavit indicates that none of that repair work was performed on any pressure-release components and/or pressure-release systems of the subject machine and no problems with those components or systems were encountered during the repairs.  *Id.*, ¶10.  Tyrone's affidavit and the repair records attached thereto indicate that the repairs Louisiana Machinery performed on the subject machine were all completed by May 2006, nearly two (2) years before Moore's accident.  Furthermore, those repairs involved the machine's electrical system (October 2003); replacement of a water separator to address low fuel pressure in the machine (May 2004); repair of a broken wire and a sticking spool in a leveling valve (July 2004); repair of a hydraulic leak (September 2004); and performance of a Caterpillar "product improvement" involving the machine's brake lever (May 2006).  *Id.*

    Moore has not come forward with any evidence refuting the evidence produced by Louisiana Machinery that it had no duty to "maintain" the subject machine on a regular basis and/or demonstrating that Louisiana Machinery had a duty, as part of its repairs on unrelated aspects of the machine, to detect and warn about an alleged design defect in the

machine's pressure-release components and/or pressure release systems.[10]  "The imposition of such a duty would effectively make the non-manufacturing seller a guarantor against defects over which it had no control or responsibility." *Jackson v. Sears Authorized Retail Dealer Store*, 36,166 (La. App. 2d Cir. 6/12/02), 821 So.2d 590 ("The light of reason illuminates the unduly onerous burden such a duty would inflict upon retailers").  Finally, given the lack of any reports to Louisiana Machinery of depressurizing problems with the machine in question and the absence of any repairs to the depressurizing components and/or depressurizing systems of the machine, the Court finds that there is no "arguably reasonable basis" for predicting that Moore could recover from Louisiana Machinery for failing to properly maintain and service the subject machine.  As a result, Louisiana Machinery has been improperly joined as a defendant in this litigation.

**(B)    Is there an "arguably reasonable basis" for Moore's claims against Louisiana Generating?**

In the Petition for Damages, Moore alleges that his employer, Louisiana Generating, had "exclusive care, custody, and control" of the subject machine on the date of his accident.  He further contends that the "dangerous and defective condition" of the machine was "known or reasonably known" to Louisiana Generating, which "despite such

---

[10] As mentioned above, a removing party's claim of improper joinder is viewed as similar to a motion for summary judgment. *Badon v. R J R Nabisco Inc.*, 224 F.3d 382 (5th Cir. 2000).  Thus, where evidence produced by the removing defendant indicates that the plaintiff has no "arguably reasonable basis" of recovering from the non-diverse defendant, the plaintiff must come forward with summary judgment-type evidence to refute the evidence produced by the defendant and/or to support his/her allegations. *Id.*, at 393; *Gray v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 405 (5th Cir. 2004)("[T]he plaintiff may not rely solely on the allegations in his complaint; the court may 'pierce the pleadings' and consider summary judgment-type evidence to determine whether the plaintiff truly has a reasonable possibility of recovery in state court").

knowledge, failed to take any means or precautions to eliminate" that condition. *See*, Paragraphs 7-8 of the Petition, R. Doc. 1-3. Moore alleges that Louisiana Generating is "strictly liable" for the defective condition of its equipment pursuant to La. C.C. arts. 2317 and/or 2322. *Id.*, Paragraph 9. He also contends that Louisiana Generating was negligent in the following ways: (1) for breach of a legally imposed duty of reasonable care; (2) for failure to maintain its equipment; (3) for failure to warn or notify; (4) for requiring work to be performed on a known dangerous device; (5) for violating state or other safety laws, thus constituting negligence *per se*; (6) for failure to provide adequate instructions to employees; and (7) for other acts of negligence to be proven at the trial of this cause. *Id.*, Paragraph 10. Alternatively, Moore asserts that Louisiana Generating is liable for committing an intentional tort since it "possessed adequate knowledge of the dangerous condition" in question, and by forcing plaintiff to work on the subject machine, "knew that the injury suffered by plaintiff was substantially certain to occur and/or consciously desired the physical result of this act and further knew the likelihood of this result occurring." *Id.*, Paragraph 11.

Under the Louisiana Workers' Compensation Act ("LWCA"), an employee's exclusive remedy against his employer for personal injuries sustained during the course and scope of employment is typically limited to recovery of workers' compensation benefits, rather than tort damages. La.R.S. §23:1031 & 1032(A)(1)(a); *Charkhian v. National Environmental Testing, Inc.*, 907 F.Supp. 961 (M.D.La. 1995), citing *Bazley v. Tortorich*, 397 So.2d 475, 479-80 (La. 1981). However, this immunity from tort actions is inapplicable when the employee's injuries are the result of an intentional act. La. R.S. §23:1032(B). In *Bazley*, the Louisiana Supreme Court stated that an act is considered intentional whenever

14

it is shown that the defendant either "consciously desired" the physical results of his conduct or was "substantially certain" that those physical results would follow from his actions. *Bazley*, at 481.

To satisfy the criteria of "substantial certainty," which is a critical element in proving an intentional tort, it is necessary to show more than a reasonable probability that an injury will occur. *Charkhian*, at 964. The term has been interpreted as being equivalent to "inevitable," "virtually sure," and "incapable of failing," *Id.,* quoting *King v. Schuylkill Metals Corp.*, 581 So.2d 300, 302 (La. App. 1st Cir. 1991). Louisiana courts have recognized that the following fact scenarios fall short of establishing that the plaintiff's injuries were inevitable or substantially certain to occur: gross negligence by the defendant;[11] the fact that employers or co-employees should have known that certain conduct or action could result in harm to the plaintiff;[12] an employer's knowledge that a work area is dangerous and makes the occurrence of an accident more likely;[13] an employer's failure to maintain a safe work area or correct unsafe working conditions;[14] and ordering an employee to work in an unsafe place.[15]

---

[11] *Id.,* citing *Hood v. South Louisiana Medical Center*, 517 So.2d 469, 471 (La. App. 1st Cir. 1987).

[12] *Id.*, citing *Faridnia v. Ecolab, Inc.*, 593 So.2d 936, 938 (La. 4th Cir. 1992).

[13] *Id.*, citing *Jacobsen v. Southeast Distribs., Inc.*, 413 So.2d 995, 997 (La.App. 4th Cir. 1982).

[14] *Id.*, citing *Gallon v. Vaughan Contractors, Inc.*, 619 So.2d 746, 749 (La. App. 4th Cir. 1993).

[15] *Id.*, at 965, citing *Redding v. Essex Crane Rental Corp. of Alabama*, 500 So.2d 880, 884 (La. App. 1st Cir. 1986).

The conclusory allegations Moore has asserted with respect to Louisiana Generating simply assert a scenario like those referenced above, which fail to establish that his injuries were the result of an intentional tort. Moore has not set forth any specific factual allegations or evidence with his motion to remand demonstrating that Louisiana Generating, in requiring him to work on the subject machine, intended that he suffer injury or was virtually sure that his injury would result.[16] *See, Charkhian*, at 965 (where this Court held that the plaintiff had done nothing more than "simply allege" that his co-employees committed intentional torts. This Court also found, even more importantly, that the plaintiff failed to introduce any evidence in support of his motion to remand indicating that the three co-employees were at least substantially certain that the plaintiff would be injured as a result of working in the lab area in question). It is well-established under Louisiana jurisprudence that mere use of the word "intentional" in a petition (and/or a mere recitation of the "consciously desired" and "substantially certain" elements of an intentional tort) is "not a talisman which automatically raises allegations of negligence to the level of [an] intentional tort so that the [LWCA's] exclusive remedy in compensation does not apply." *Id.* Thus, Moore's mere assertions of intentional acts in his petition are insufficient to establish intent.[17]

---

[16] Although Moore states in a conclusory fashion, in his motion to remand, that Louisiana Generating "knew or should have known of the unreasonably dangerous condition and/or defect in the machine in question, because of the numerous complaints and work orders on that particular machine," he has not presented any competent evidence to substantiate that assertion. *See*, R. Doc. 6-2, p. 7.

[17] *See, Keating v. Shell Chemical Co.*, 610 F.2d 328 (5th Cir. 1980)(Claims that an employer and executive officers of the employer created a foreseeable danger and failed to provide the plaintiff with a safe place to work and that knowledge of defects in the equipment with which the plaintiff was working at the time of the accident constituted

16

Furthermore, while this case was pending in state court, Louisiana Generating propounded Requests for Admission to Moore to which he did not timely respond. As a result of such failure to respond, the following facts were deemed admitted by Moore:[18]

> (1) Louisiana Generating, L.L.C., its officers and employees were without knowledge of any "dangerous and defective" condition of the "657 E Coal Scraper;"
>
> (2) Louisiana Generating, L.L.C., its officers and employees undertook appropriate precautions to ensure that work could be safely performed on the "657 E Coal Scraper;"
>
> (3) Louisiana Generating, L.L.C., Inc., through its agents, officers or employees, was not substantially certain that any injury to plaintiff would occur to petitioner herein; and
>
> (4) Louisiana Generating, L.L.C., Inc., its officers or employees were not substantially certain that any accident or injury would occur to petitioner while working on or about March 25, 2008.

*See*, Exhibit 4 to Caterpillar's opposition, Request for Admission Nos. 2, 3, 6 and 8.

Considering the above admissions and the fact that there is no evidence in the record raising a genuine issue of material fact as to whether Louisiana Generating committed an intentional act/tort, the Court finds that Moore has no "arguably reasonable

---

an intentional act did not amount to a colorable claim of an intentional tort for purposes of the intentional tort exception to the exclusive remedy provisions of the LWCA. The claims amounted to gross negligence at most).

[18] La. C.C.P. art. 1467 provides that a matter is admitted "unless, within fifteen (15) days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney . . ." La. C.C.P.art 1467. Since Moore did not timely respond to the above requests for admission within fifteen (15) days of service and the state court apparently did not allow a longer time for response, the above matters were admitted by operation of law pursuant to La.C.C.P. art. 1467.

basis" for recovering against Louisiana Generating based upon that theory, and since Moore's exclusive remedy against Louisiana Generating for any alleged negligence or gross negligence is worker's compensation benefits, Louisiana Generating has been improperly joined as a defendant in this action. When the citizenship of non-diverse defendants, Louisiana Machinery and Louisiana Generating, is ignored, complete diversity of citizenship exists herein, and with at least $75,000.00, exclusive of interest and costs, in controversy, Caterpillar appropriately removed this matter on the basis of diversity jurisdiction. Accordingly, Moore's present motion to remand should be denied.

## RECOMMENDATION

For the above reasons, it is recommended that the Motion to Remand (R. Doc. 6) filed by plaintiff, Donald Moore, should be **DENIED**.

Signed in chambers in Baton Rouge, Louisiana, November 19, 2009.

_____

**MAGISTRATE JUDGE CHRISTINE NOLAND**